## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DONNA-KAY E. ARMSHAW, ET AL** | **CIVIL ACTION** |
| **v.** | **NO. 2021-cv-01398** |
| **NEW ORLEANS MILITARY AND MARITIME ACADEMY, INC., ET AL** | **JUDGE JANE TRICHE MILAZZO** |
| | **MAGISTRATE JUDGE MICHAEL NORTH** |

### ANSWER

**NOW INTO COURT,** through the undersigned counsel, comes Defendant, New Orleans Military and Maritime Academy, Inc., which responds to the Complaint for Damages ("Complaint") filed by Donna-Kay E. Armshaw and Stephen P. Armshaw (collectively, the "Armshaws") as follows:

### PRELIMINARY STATEMENT

The New Orleans Military and Maritime Academy, Inc. ("NOMMA") is a Type 2 public charter school located in New Orleans. Its charter was first approved by the Louisiana Board of Elementary and Secondary Education on May 20, 2011 and was renewed in 2016 for the maximum allowed ten-year term, with its current charter approved through June 30, 2026.

NOMMA's mission is to educate high school students, no matter their background or previous school experience, to enable its students to fully achieve their personal and academic potential through the acquisition of core knowledge and the skills of analysis, problem-solving, communication, and global responsibility. It is an open enrollment school, meaning that it accepts

any student who applies from the State of Louisiana. The school is diverse in the true sense of the word – it has a majority minority population of students, approximately 80% of the school's population is economically disadvantaged, and a large majority of the students arrive at NOMMA at risk for not completing high school. Despite this, NOMMA's graduation rate exceeds 90%, typically more than half of graduates move on to colleges or universities and approximately 20% of its last graduating class joined a branch of the United States Military.

NOMMA students, or cadets as they are known internally, are taught by retired Marine Instructors and civilian teachers, who provide a rigorous college preparatory curriculum as well as career and technical education. 100% of NOMMA's student body participates in the Marine Corps Junior Reserve Officer Training Corps ("MCJROTC") Program. Mandatory participation in the MCJROTC is intended to instill the following values in NOMMA students: 1) the value of citizenship; 2) service to the United States; 3) personal responsibility; and 4) a sense of accomplishment.

The Louisiana Board of Elementary and Secondary Education ("BESE") grades schools annually on all levels of performance. NOMMA's last official School Performance Score from BESE was an "A." Notably, NOMMA has been designated as a Naval Honor School. This means NOMMA's MJROTC program was in the top 20% of such programs within its region, which includes approximately 65 schools across seven states.

NOMMA students learn the qualities of self-discipline, intrinsic motivation to excel, and ethical decision making, learned through an explicit character education program and through a discipline program guided by Military Protocols. NOMMA Administration prides itself on creating a community of respect wherein all community members are treated with respect and dignity. School discipline is responsibility centered, meaning that NOMMA cadets are imbued with a personal sense of responsibility for their actions and conduct.

NOMMA has an anti-bullying policy, and its faculty and staff receive annual comprehensive and in-depth training on bullying and suicide prevention.

Valerie Armshaw (V.A.) was a part of the NOMMA community. Her loss is shared and felt by NOMMA faculty and cadets alike. Despite NOMMA's sadness in V.A.'s untimely passing, it bears no liability for the same as a matter of law.

## **RESPONSE TO ALLEGATIONS IN COMPLAINT**

AND NOW, FURTHER ANSWERING, after having been served with Plaintiffs' Complaint and without the benefit of having conducted its own discovery or depositions, NOMMA responds as follows to the allegations contained in the Complaint filed by the Plaintiffs:

1.

The allegations contained in Paragraph 1 of the Complaint are denied, except to admit: (a) V.A. was first enrolled as a NOMMA cadet in August 2018; (b) because of the COVID-19 pandemic, V.A. attended NOMMA remotely from the time period of March 18, 2020 to the date of her death on November 4, 2020; (c) due to Hurricane Zeta related complications, NOMMA was

closed on the school days immediately preceding V.A.'s suicide (October 29, 30 and November 2, 2020);  and on November 3, 2020, for Election Day. NOMMA affirmatively avers that on November 4, 2020, V.A. attended her virtual homeroom session at 8:30 a.m. but failed to attend her only other class on her schedule for that day at 2:00 p.m. V.A. was residing at her home with the Armshaws prior to her committing suicide on November 4, 2020, and thus, the Armshaws had a duty to supervise their daughter, V.A., both on that date of her death, and during the time period immediately preceding her death.

2.

The allegations contained in Paragraph 2 of the Complaint are denied for lack of knowledge or information sufficient to justify a belief about the truth of those allegations.

3.

The allegations contained in Paragraph 3 of the Complaint are denied for lack of knowledge or information sufficient to justify a belief about the truth of those allegations, except to admit that: (a) V.A. had prior suicidal ideation(s) and/or attempt(s); and (b) V.A. was admitted to Children's Hospital following a 2018 assessment by NOMMA. NOMMA specifically denies the allegation that V.A. was the subject of "persistent bullying" while on NOMMA's campus. Because of the COVID-19 pandemic, the NOMMA campus was closed to most students, including V.A., from at least mid-March 2020 until January 2021.

4.

The allegations contained in Paragraph 4 of the Complaint are denied for lack of knowledge or information sufficient to justify a belief as to the truth of those allegations, except to admit that Voltaire Alexander Casino ("Casino") never reported any of his communications with V.A. to NOMMA Administration.

5.

The allegations contained in Paragraph 5 of the Complaint are denied for lack of knowledge or information sufficient to justify a belief about the truth of those allegations.

6.

The allegations contained in Paragraph 6 of the Complaint are admitted.

7.

The allegations contained in Paragraph 7 of the Complaint are denied for lack of knowledge or information sufficient to justify a belief about the truth of those allegations, except to admit that Casino exchanged emails with V.A. on numerous occasions in violation of NOMMA policy and unbeknownst to NOMMA Administration.

8.

The allegations contained in Paragraph 8 of the Complaint are denied for lack of knowledge or information sufficient to justify a belief about the truth of those allegations, except to admit that, unbeknownst to NOMMA Administration, counselor Tesia Williams ("Williams") sent an email to V.A. with suicide prevention resources in April 2020.

9.

The allegations contained in Paragraph 9 of the Complaint are denied for lack of knowledge or information sufficient to justify a belief about the truth of those allegations, except to admit: (a) Williams sent an email to V.A. with suicide prevention resources in April 2020; and (b) Williams did not report to NOMMA Administration that she sent an email to V.A. with suicide prevention resources in April 2020.

10.

The allegations contained in Paragraph 10 of the Complaint are denied. V.A.'s family was aware of her history of psychological issues, including V.A.'s history of self-harm (*i.e.,* cutting) and prior suicidal ideations/attempt(s) and NOMMA's requiring V.A. to undergo a psychological assessment at a local hospital in 2018 before she returned to school.

11.

The allegations contained in Paragraph 11 of the Complaint are denied, except to admit that V.A. committed suicide on November 4, 2020.

12.

The allegations contained in Paragraph 12 of the Complaint are denied, except to admit that: (a) Donna-Kay E. Armshaw ("Mrs. Armshaw") is the biological mother of V.A.; and (b) V.A. is deceased.

13.

The allegations contained in Paragraph 13 of the Complaint are denied, except to admit that: (a) Stephen P. Armshaw ("Mr. Armshaw") is not the biological father of V.A.; (b) Stephen P. Armshaw adopted V.A.; and (c) V.A. is deceased.

14.

NOMMA objects to the allegations contained in Paragraph 14 of the Complaint because those allegations call for legal conclusions regarding the applicability of subsections (A)(1) and (A)(2) of Louisiana Civil Code Article 2315. Subject to and without waiving that objection, NOMMA denies the allegations contained in Paragraph 14 of the Complaint, except to admit that: (a) V.A. was a minor when she committed suicide on November 4, 2020; (b) V.A. was not married when she committed suicide on November 4, 2020; (c) V.A. did not have any children; and (d)

Mr. and Mrs. Armshaw are "of the age of majority." NOMMA denies the allegation that Mr. and Mrs. Armshaw are "domiciled in Houston, Texas" for lack of knowledge or information sufficient to justify a belief as to the truth of that allegation.

15.

In response to Paragraph 15 of the Complaint, NOMMA admits its procedural status as a defendant in this action but denies any liability for V.A.'s committing suicide on November 4, 2020. NOMMA admits the allegations contained in Paragraph 15A of the Complaint. NOMMA denies the allegations contained in Paragraph 15B of the Complaint for lack of knowledge or information sufficient to justify a belief as to the truth of those allegations, except to admit that Casino was an employee of NOMMA for the period of February 2018 to January 2021. NOMMA denies the allegations contained in Paragraph 15C of the Complaint.

16.

NOMMA objects to the allegations contained in Paragraph 16 of the Complaint because those allegations call for legal conclusions regarding the proper venue pursuant to 28 U.S.C. § 1391. Subject to and without waiving that objection, NOMMA denies the allegations in Paragraph 16 of the Complaint for lack of knowledge or information sufficient to justify a belief as to the truth of those allegations.

17.

NOMMA objects to the allegations contained in Paragraph 17 of the Complaint because those allegations call for legal conclusions regarding subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343(3), 1343(4), and 1367(a). Subject to and without waiving that objection, NOMMA denies the allegations in Paragraph 17 of the Complaint for lack of knowledge or information sufficient to justify a belief as to the truth of those allegations.

18.

NOMMA objects to the allegations contained in Paragraph 18 of the Complaint because those allegations call for legal conclusions regarding personal jurisdiction. Subject to and without waiving that objection, NOMMA denies the allegations in Paragraph 18 of the Complaint for lack of knowledge or information sufficient to justify a belief as to the truth of those allegations. NOMMA specifically denies the allegation that NOMMA caused injury to V.A., Mr. Armshaw, and Mrs. Armshaw.

19.

The allegations contained in Paragraph 19 of the Complaint are denied for lack of knowledge or information sufficient to justify a belief as to the truth of those allegations. Plaintiffs did not attach as an exhibit the relevant pages from the website cited in footnote number 1, and NOMMA has not independently verified the information or confirmed the opinions presented on the website cited by Plaintiffs in footnote number 1. NOMMA's faculty and staff receive at least three hours of mandatory anti-bullying and suicide prevention training annually.

20.

The allegations contained in Paragraph 20 of the Complaint are denied for lack of knowledge or information sufficient to justify a belief as to the truth of those allegations. Plaintiffs did not identify all the studies relied upon or attach as an exhibit the document cited in footnote number 2, and NOMMA has not independently verified the information or confirmed the opinions presented in the document cited in footnote number 2. NOMMA's faculty and staff receive at least three hours of mandatory anti-bullying and suicide prevention training annually.

21.

The allegations contained in Paragraph 21 of the Complaint are denied for lack of knowledge or information sufficient to justify a belief as to the truth of those allegations. Plaintiffs did not attach as an exhibit the document cited in footnote number 3, and NOMMA has not independently verified the information or confirmed the opinions presented in the document cited in footnote number 3. NOMMA's faculty and staff receive at least three hours of mandatory anti-bullying and suicide prevention training annually.

22.

The allegations contained in Paragraph 22 of the Complaint are denied for lack of knowledge or information sufficient to justify a belief as to the truth of those allegations. Plaintiffs did not attach as an exhibit the document cited in footnote number 4, and NOMMA has not independently verified the information or confirmed the opinions presented in the document cited in footnote number 4. NOMMA's faculty and staff receive at least three hours of mandatory anti-bullying and suicide prevention training annually.

23.

NOMMA objects to the allegations contained in Paragraph 23 of the Complaint because Paragraph 23 fails to define the word "link"; fails to clarify whether "link" refers to a temporal or causal association; and fails to cite any authority that would further define or explain that term. Subject to and without waiving those objections, NOMMA denies the allegations contained in Paragraph 23 of the Complaint, except to admit that NOMMA was generally aware that some school children who are bullied subsequently choose to commit suicide. NOMMA's faculty and staff receive at least three hours of mandatory anti-bullying and suicide prevention training annually.

24.

The allegations contained in Paragraph 24 of the Complaint are denied, except to admit that "The Jason Flatt Act of Louisiana" was signed into law on June 16, 2008, as codified in LA. REV. STAT. § 17:431.1. The language of that statute is the best evidence of the statute's requirements, and any allegations contained in Paragraph 24 that contradict the text of the statute are denied.

25.

The allegations contained in Paragraph 25 of the Complaint are denied, except to admit that "The Jason Flatt Act of Louisiana" was signed into law on June 16, 2008, as codified in LA. REV. STAT. § 17:431.1. The language of that statute is the best evidence of the statute's requirements, and any allegations contained in Paragraph 25 that contradict the text of the statute are denied.

26.

The allegations contained in Paragraph 26 of the Complaint are denied, except to admit that "The Jason Flatt Act of Louisiana" was signed into law on June 16, 2008, as codified in LA. REV. STAT. § 17:431.1. The language of that statute is the best evidence of the statute's requirements, and any allegations contained in Paragraph 26 that contradict the text of the statute are denied.

27.

The allegations contained in Paragraph 27 of the Complaint are denied, except to admit that "The Jason Flatt Act of Louisiana" was signed into law on June 16, 2008, as codified in LA. REV. STAT. § 17:431.1. The language of that statute is the best evidence of the statute's

requirements, and any allegations contained in Paragraph 27 that contradict the text of the statute are denied.

28.

The allegations contained in Paragraph 28 of the Complaint are denied, except to admit that "The Jason Flatt Act of Louisiana" was signed into law on June 16, 2008, as codified in LA. REV. STAT. § 17:431.1. The language of that statute is the best evidence of the statute's requirements, and any allegations contained in Paragraph 28 that contradict the text of the statute are denied. In compliance with the statute, NOMMA's faculty and staff receive annual suicide prevention training.

29.

The allegations contained in Paragraph 29 of the Complaint are admitted.

30.

The allegations contained in Paragraph 30 of the Complaint are denied, except to admit that: (a) NOMMA did not report the training its faculty received pursuant to the Flatt Act prior to November 4, 2020; and (b) because it did not report the training, NOMMA was not listed by the Louisiana Department of Education as a Suicide Prevention Certified School for the 2020-2021 School Year. However, NOMMA's faculty and staff did receive the required suicide prevention training for the 2019-2020 and 2020-2021 academic years.

31.

The allegations contained in Paragraph 31 of the Complaint, which cites only a portion of the NOMMA Anti-Bullying Policy, are admitted.

32.

The allegations contained in Paragraph 32 of the Complaint are denied for lack of knowledge or information sufficient to justify a belief as to the truth of those allegations, except to admit that: (a) Casino did not report to NOMMA Administration any bullying incidents involving V.A. on the NOMMA campus; and (b) because of the COVID-19 pandemic, the NOMMA campus was closed to students from at least mid-March 2020 until January 2021.

33.

The allegations contained in Paragraph 33 of the Complaint are denied for lack of knowledge or information sufficient to justify a belief as to the truth of the those allegations, including the allegation regarding "repeated victimization," except to admit that: (a) on November 4, 2020, NOMMA's cadet file for V.A. did not include any record regarding any incidents of bullying on NOMMA's campus; and (b) because of the COVID-19 pandemic, the NOMMA campus was closed to students from at least mid-March 2020 until January, 2021.

34.

The allegations contained in Paragraph 34 are denied, except to admit that NOMMA maintains a "Parent Contact Log" in connection with each cadet. That Parent Contact Log is not a confidential log. Certain confidential communications between a parent and the NOMMA faculty and staff may not be logged in the Parent Contact Log.

35.

The allegations contained in Paragraph 35 of the Complaint are admitted.

36.

The allegations contained in Paragraph 36 of the Complaint are denied for lack of knowledge and information sufficient to justify a belief as to the truth of those allegations, except

12

to admit that Casino did not log a single entry in the Parent Contact Log and that Casino exchanged emails with V.A. on numerous occasions in violation of NOMMA policy and unbeknownst to NOMMA Administration.

37.

The allegations contained in Paragraph 37 of the Complaint are admitted. The Parent Contact Log is not a confidential log. Certain confidential communications between a parent and the NOMMA faculty and staff may not be logged in the Parent Contact Log.

38.

The allegations contained in Paragraph 38 of the Complaint are denied for lack of sufficient knowledge or information sufficient to justify a belief as to the truth of those allegations. NOMMA Administration had no notice of any bullying of V.A. on the NOMMA campus in fall of 2019 or any other period during Valerie's tenure at NOMMA.

39.

The allegations contained in Paragraph 39 of the Complaint are denied, except to admit that NOMMA Administration had no notice of any bullying of V.A. on the NOMMA campus in fall of 2019 or any other period during Valerie's tenure at NOMMA.

40.

The allegations contained in Paragraph 40 of the Complaint are denied for lack of sufficient knowledge or information sufficient to justify a belief as to the truth of those allegations.

41.

The allegations contained in Paragraph 41 of the Complaint are denied for lack of sufficient knowledge or information sufficient to justify a belief as to the truth of those allegations, except to admit that, unbeknownst to NOMMA Administration, Mrs. Williams sent an email to V.A. with

suicide prevention resources in April of 2020. That email is the best evidence of its contents, and NOMMA denies any allegation contained in Paragraph 41 that contradicts the contents of that email.

42.

The allegations contained in Paragraph 42 of the Complaint are denied for lack of sufficient knowledge or information sufficient to justify a belief as to the truth of those allegations, except to admit that, unbeknownst to NOMMA Administration, Mrs. Williams sent an email to V.A. with suicide prevention resources in April 2020.  That email is the best evidence of its contents, and NOMMA denies any allegation contained in Paragraph 42 that contradicts the contents of that email.

43.

The allegations contained in Paragraph 43 of the Complaint are denied, except to admit that there is no entry on the Parent Contact Log by Mrs. Williams that specifically includes the word "depression" or the phrase "suicidal thoughts." That Parent Contact Log is not a confidential log. Certain confidential communications between a parent and the NOMMA faculty and staff may not be logged in the Parent Contact Log.

44.

The allegations contained in Paragraph 44 of the Complaint are admitted.

45.

The allegations contained in Paragraph 45 of the Complaint are denied for lack of sufficient knowledge or information sufficient to justify a belief as to the truth of those allegations.

46.

The allegations contained in Paragraph 46 of the Complaint are denied as written, except to admit that Casino exchanged emails with V.A. through their NOMMA email accounts, including email exchanges on Thursday, April 23, 2020. Those email exchanges are the best evidence of their content, and NOMMA denies any allegations in Paragraph 46 that mischaracterize or are inconsistent with the content of those emails.

47.

The allegations contained in Paragraph 47 of the Complaint are denied as written, except to admit that: (a) Casino exchanged emails with V.A. through their NOMMA email accounts, which were in violation of NOMMA policy and unbeknownst to NOMMA Administration; and (b) those email exchanges include date and time stamps. The date and time stamps are the best evidence of when each email was sent.

48.

The allegations contained in Paragraph 48 of the Complaint are denied for lack of knowledge or information sufficient to justify a belief as to the truth of those allegations, except to admit that Casino exchanged emails with V.A., including on April 22, 2020, and May 7, 2020. Those email exchanges are the best evidence of their content, and NOMMA denies any allegations in Paragraph 48 that mischaracterize or are inconsistent with the content of those emails.

49.

The allegations contained in Paragraph 49 of the Complaint are denied for lack of sufficient knowledge or information sufficient to justify a belief as to the truth of those allegations.

50.

The allegations contained in Paragraph 50 of the Complaint are denied for lack of sufficient knowledge or information sufficient to justify a belief as to the truth of those allegations.

51.

The allegations contained in Paragraph 51 of the Complaint are denied for lack of knowledge or information sufficient to justify a belief as to the truth of those allegations, except to admit: (a) that Casino exchanged emails with V.A., including on May 5, 2020; (b) Casino never reported the alleged rape to NOMMA Administration; and (c) upon information and belief, Casino never reported the alleged rape to Child Protective Services or to the New Orleans Police Department. NOMMA further responds that the Parent Contact Log is not a confidential log; communications between a parent and the NOMMA faculty and staff regarding a sexual assault may not be entered in the Parent Contact Log.

52.

The allegations contained in Paragraph 52 of the Complaint are denied for lack of knowledge or information sufficient to justify a belief as to the truth of those allegations, except to admit that Casino exchanged emails with V.A., including on May 4, 2020. Those emails are the best evidence of their content, and NOMMA denies any allegations contained in Paragraph 52 of the Complaint that contradict the content of those emails.

53.

The allegations contained in Paragraph 53 of the Complaint are denied for lack of sufficient knowledge or information sufficient to justify a belief as to the truth of those allegations.

54.

The allegations contained in Paragraph 54 of the Complaint are denied for lack of knowledge or information sufficient to justify a belief as to the truth of those allegations, except to admit that Casino exchanged emails with V.A., including on April 22, 2020. Those emails are the best evidence of their content, and NOMMA denies any allegations contained in Paragraph 54 of the Complaint that contradict the content of those emails.

55.

The allegations contained in Paragraph 55 of the Complaint are denied for lack of knowledge or information sufficient to justify a belief as to the truth of those allegations, except to admit that Casino exchanged emails with V.A., including on May 7, 2020. Those emails are the best evidence of their content, and NOMMA denies any allegations contained in Paragraph 55 of the Complaint that contradict the content of those emails.

56.

The allegations contained in Paragraph 56 of the Complaint are denied for lack of knowledge or information sufficient to justify a belief as to the truth of those allegations.

57.

The allegations contained in Paragraph 57 of the Complaint are denied for lack of knowledge or information sufficient to justify a belief as to the truth of those allegations, except to admit that Casino exchanged emails with V.A., including on May 15, 2020. Those emails are the best evidence of their content, and NOMMA denies any allegations contained in Paragraph 54 of the Complaint that contradict the content of those emails.

58.

The allegations contained in Paragraph 58 are denied, except to admit that NOMMA faculty members have an affirmative duty to report any child endangerment to the appropriate State or municipal agency. NOMMA also provides mandatory reporting training to all faculty and staff on an annual basis.

59.

The allegations contained in Paragraph 59 of the Complaint are denied for lack of knowledge or information sufficient to justify a belief as to the truth of those allegations, except to admit that Casino exchanged emails with V.A., including on May 15, 2020. Those emails are the best evidence of their content, and NOMMA denies any allegations contained in Paragraph 59 of the Complaint that contradict the content of those emails.

60.

The allegations contained in Paragraph 60 of the Complaint are denied for lack of knowledge or information sufficient to justify a belief as to the truth of those allegations.

61

The allegations contained in Paragraph 61 of the Complaint are denied for lack of knowledge or information sufficient to justify a belief as to the truth of those allegations.

62.

The allegations contained in Paragraph 62 of the Complaint are denied for lack of knowledge or information sufficient to justify a belief as to the truth of those allegations.

63.

The allegations contained in Paragraph 63 of the Complaint are denied for lack of knowledge or information sufficient to justify a belief as to the truth of those allegations.

64.

The allegations contained in Paragraph 64 of the Complaint are denied for lack of knowledge or information sufficient to justify a belief as to the truth of those allegations, except to admit that V.A. committed suicide on November 4, 2020.

65.

The allegations contained in Paragraph 65 of the Complaint are denied for lack of knowledge or information sufficient to justify a belief as to the truth of those allegations.

66.

The allegations contained in Paragraph 66 of the Complaint are denied for lack of knowledge or information sufficient to justify a belief as to the truth of those allegations.

67.

The allegations contained in Paragraph 67 of the Complaint are denied for lack of knowledge or information sufficient to justify a belief as to the truth of those allegations, except to admit that V.A. committed suicide on November 4, 2020.

68.

The allegations contained in Paragraph 68 of the Complaint are denied for lack of knowledge or information sufficient to justify a belief as to the truth of those allegations.

69.

The allegations contained in Paragraph 69 of the Complaint are denied for lack of knowledge or information sufficient to justify a belief as to the truth of those allegations.

70.

The allegations contained in Paragraph 70 of the Complaint are denied for lack of knowledge or information sufficient to justify a belief as to the truth of those allegations.

71.

The allegations contained in Paragraph 71 of the Complaint are not directed at NOMMA and do not require a response from NOMMA. To the extent a response is deemed necessary, NOMMA denies the allegations contained in Paragraph 71 of the Complaint.

72.

The allegations contained in Paragraph 72 of the Complaint are not directed at NOMMA and do not require a response from NOMMA. To the extent a response is deemed necessary, NOMMA denies the allegations contained in Paragraph 72 of the Complaint.

73.

The allegations contained in Paragraph 73 of the Complaint are not directed at NOMMA and do not require a response from NOMMA. To the extent a response is deemed necessary, NOMMA denies the allegations contained in Paragraph 73 of the Complaint.

74.

The allegations contained in Paragraph 74 of the Complaint are not directed at NOMMA and do not require a response from NOMMA. To the extent a response is deemed necessary, NOMMA denies the allegations contained in Paragraph 74 of the Complaint.

75.

The allegations contained in Paragraph 75 of the Complaint are not directed at NOMMA and do not require a response from NOMMA. To the extent a response is deemed necessary, NOMMA denies the allegations contained in Paragraph 75 of the Complaint.

76.

The allegations contained in Paragraph 76 of the Complaint are denied.

77.

The allegations contained in Paragraph 77 of the Complaint are denied.

78.

NOMMA objects to the allegations contained in Paragraph 78 of the Complaint because those allegations call for legal conclusions regarding care, custody, and control. Subject to and without waiving those objections, NOMMA denies the allegations contained in Paragraph 78, except to admit that: (a) NOMMA wants to protect all its cadets from bullying, assault, and battery, especially while those cadets are on NOMMA's campus; (b) NOMMA has an anti-bullying policy, and its faculty and staff receive annual comprehensive and in-depth training on bullying and suicide prevention; and (c) due to the COVID-19 pandemic, NOMMA's campus was not open to students from at least mid-March 2020 through January 2021.

79.

The allegations contained in Paragraph 79 of the Complaint are denied.

80.

The allegations contained in Paragraph 80 of the Complaint are denied.

81.

The allegations contained in Paragraph 81 of the Complaint are denied. OPSB does not govern NOMMA.

82.

The allegations contained in Paragraph 82 of the Complaint are denied for lack of knowledge or information sufficient to justify a belief as to the truth of those allegations, except

to admit that: (a) OPSB does not govern NOMMA and (b) NOMMA had an anti-bullying policy that required both school employees and students to report all bullying incidents. That policy is the best evidence of its contents.

83.

The allegations contained in Paragraph 83 of the Complaint are denied for lack of knowledge or information sufficient to justify a belief as to the truth of those allegations, except to admit: (a) Casino was a NOMMA employee at all relevant times; (b) Casino never reported any bullying of V.A. on NOMMA's campus to NOMMA Administration; and (c) due to the COVID-19 pandemic, NOMMA's campus was not open to students from at least mid-March 2020 through January 2021.

84.

The allegations contained in Paragraph 84 of the Complaint are denied for lack of knowledge or information sufficient to justify a belief as to the truth of those allegations, except to admit that: (a) Casino never reported any bullying of V.A. on NOMMA's campus to NOMMA Administration and (b) due to the COVID-19 pandemic, NOMMA's campus was not open to students from at least mid-March 2020 through January 2021.

85.

The allegations contained in Paragraph 85 of the Complaint are denied.

86.

The allegations contained in Paragraph 86 of the Complaint are denied.

87.

The allegations contained in Paragraph 87 of the Complaint are denied.

88.

The allegations contained in Paragraph 88 of the Complaint are not directed at NOMMA and do not require a response from NOMMA. To the extent a response is deemed necessary, NOMMA denies the allegations contained in Paragraph 88 of the Complaint for lack of knowledge or information sufficient to justify a belief as to the truth of those allegations.

89.

The allegations contained in Paragraph 89 of the Complaint are not directed at NOMMA and do not require a response from NOMMA. To the extent a response is deemed necessary, NOMMA denies the allegations contained in Paragraph 89 of the Complaint.

90.

The allegations contained in Paragraph 90 of the Complaint are not directed at NOMMA and do not require a response from NOMMA. To the extent a response is deemed necessary, NOMMA denies the allegations contained in Paragraph 90 of the Complaint.

91.

The allegations contained in Paragraph 91 of the Complaint are not directed at NOMMA and do not require a response from NOMMA. To the extent a response is deemed necessary, NOMMA denies the allegations contained in Paragraph 91 of the Complaint.

92.

The allegations contained in Paragraph 92 of the Complaint are not directed at NOMMA and do not require a response from NOMMA. To the extent a response is deemed necessary,

NOMMA denies the allegations contained in Paragraph 92 of the Complaint, including all sub-parts of Paragraph 92.

93.

The allegations contained in Paragraph 93 of the Complaint are denied.

94.

The allegations contained in Paragraph 94 of the Complaint are denied for lack of knowledge or information sufficient to justify a belief as to the truth of those allegations. NOMMA specifically denies the allegation that NOMMA is liable for V.A.'s decision to commit suicide.

95.

The allegations contained in Paragraph 95 of the Complaint, including all sub-parts of Paragraph 95, are denied.

96.

Paragraph 96 of the Complaint contains a prayer for relief and does not require a response from NOMMA. To the extent a response is deemed necessary, NOMMA denies the allegations contained in Paragraph 96 of the Complaint.

97.

In an abundance of caution, NOMMA denies any additional allegations contained in the Complaint, including any allegations contained in any headings, any allegations in any non-numbered or misnumbered paragraphs, and/or any allegations contained in any paragraphs (unintentionally) not previously addressed by this pleading. All allegations in the Complaint for Damages are denied unless specifically admitted.  Further, any factual allegation is admitted only with respect to specific facts and not to any conclusions, characterizations, implications, or speculations which are contained in the allegation or in the Complaint for Damages as a whole.

## AFFIRMATIVE DEFENSES

**AND NOW FURTHER ANSWERING**, after having been served with Plaintiffs' Complaint and without the benefit of having conducted its own discovery or depositions, NOMMA pleads the following, non-exclusive affirmative defenses in accordance with the Federal Rules of Civil Procedure, which require certain affirmative defenses be pleaded in a defendant's Answer:

## FIRST DEFENSE

V.A. made a deliberate, conscious, and pre-meditated decision to commit suicide. While her death was tragic, V.A.'s voluntary choice to commit suicide constitutes an intervening and superseding cause, which precludes a court from finding that the (alleged) negligence of any defendant was the cause of her death. In Louisiana, it is well-established that the deliberate choice to commit suicide, even for the purpose of ending one's pain and suffering, constitutes a superseding event that bars recovery for any damages resulting from that choice.

## SECOND DEFENSE

LA. REV. STAT. § 9:2800.10 ("the Felony Bar") provides, in pertinent part, that "[n]o person shall be liable for damages for injury, death, or loss sustained by a perpetrator of a felony offense during the commission of the offense..." The Felony Bar only requires a defendant to prove, by a preponderance of the evidence, that the perpetrator was injured or died during the commission of a felony offense. The Felony Bar does not require evidence of a subsequent felony conviction, and no Louisiana court has required evidence of a felony conviction because the statute specifically precludes liability for the "death" of the felony perpetrator.

NOMMA affirmatively pleads that Plaintiffs are precluded by the Felony Bar from recovering for V.A.'s injuries and/or death because she died during the commission of the felony offense of second-degree murder in violation of LA. REV. STAT. § 14:30.1. That statute defines

25

second-degree murder as "the killing of a human being" when "the offender has the specific intent to kill or inflict great bodily harm." *See* LA. REV. STAT. § 14:30.1(A)(1). Here, it is undisputed: (a) that V.A. had the specific intent to kill or inflict great bodily harm when she pulled the trigger on November 4, 2020; and (b) that V.A. killed a human being when she pulled the trigger on November 4, 2020.

### THIRD DEFENSE

Alternatively, and only in the event it is determined that V.A. did not die during the commission of the felony offense of second-degree murder in violation of LA. REV. STAT. § 14:30.1, NOMMA affirmatively pleads that Plaintiffs are precluded by the Felony Bar from recovering for V.A.'s injuries and/or death because she died during the commission of the felony offense of manslaughter in violation of LA. REV. STAT. § 14:31.

### FOURTH DEFENSE

NOMMA affirmatively pleads that Plaintiffs' damages were 100% solely caused by V.A.'s voluntary choice to commit suicide. Alternatively, NOMMA affirmatively pleads the comparative fault of V.A., which bars or reduces Plaintiffs' recovery against NOMMA.

### FIFTH DEFENSE

Alternatively, and only in the event it is determined that Plaintiffs' damages and V.A.'s suicide were <u>not</u> 100% solely caused by V.A.'s voluntary choice to commit suicide *and* that V.A. was raped, bullied, and harassed by the person referred to as "Valerie's ex-boyfriend, M." in paragraph 38 of the Complaint and as "Valerie's ex-boyfriend and rapist, M." in paragraph 52 of the Complaint, NOMMA affirmatively pleads that Plaintiffs' damages and V.A.'s suicide were caused in whole or in part by the criminal conduct, negligence, and/or fault of "Valerie's ex-boyfriend and rapist, M," which bars or reduces Plaintiffs' recovery against NOMMA.

## SIXTH DEFENSE

Alternatively, and only in the event it is determined that Plaintiffs' damages and V.A.'s suicide were <u>not</u> 100% solely caused by V.A.'s voluntary choice to commit suicide *and* that V.A. was "bullied and betrayed" by her friend referred to as "T.J." in paragraph 53 of the Complaint, NOMMA affirmatively pleads that Plaintiffs' damages and V.A.'s suicide were caused in whole or in part by the negligence and/or fault of "T.J.", which bars or reduces Plaintiffs' recovery against NOMMA.

## SEVENTH DEFENSE

Alternatively, and only in the event it is determined that Plaintiffs' damages and V.A.'s suicide were <u>not</u> 100% solely caused by V.A.'s voluntary choice to commit suicide, NOMMA affirmatively pleads that Plaintiffs' damages and V.A.'s suicide were caused in whole or in part by the negligence and/or fault of Mr. and Mrs. Armshaw, which bars or reduces Plaintiffs' recovery against NOMMA, including but not limited to: (a) Mrs. Armshaw's purchasing razor packets and pills and telling V.A. to "do it better" the next time she committed suicide, as stated in V.A.'s email on May 17, 2020; (b) Mr. and Mrs. Armshaw's keeping an accessible hand gun and ammunition in the home with a child who previously attempted to commit suicide; (c) Mr. and Mrs. Armshaw's failure to notice the warning signs of depression and obtain proper counseling for V.A., especially in light of V.A.'s prior suicide attempt(s); (d) acts and omissions, including the failure to supervise their daughter, V.A., both on the day of her death and in the time period preceding her death; (e) for any verbal or physical abuse as alleged by V.A.; and (f) other negligent acts and omissions to be proven at trial.

## EIGHTH DEFENSE

Alternatively, and only in the event it is determined that Plaintiffs' damages and V.A.'s suicide were <u>not</u> 100% solely caused by V.A.'s voluntary choice to commit suicide *and* that V.A. actions were encouraged, "egged on" or were caused in any way by V.A.'s ex-boyfriend, "J.T.", NOMMA affirmatively pleads that Plaintiffs' damages and V.A.'s suicide were caused in whole or in part by the negligence and/or fault of "J.T.", which bars or reduces Plaintiffs' recovery against NOMMA.

## NINTH DEFENSE

Alternatively, and only in the event it is determined that Plaintiffs' damages and V.A.'s suicide were <u>not</u> 100% solely caused by V.A.'s voluntary choice to commit suicide, NOMMA affirmatively pleads that Plaintiffs' damages and V.A.'s suicide were caused in whole or in part by the negligence and/or fault of other third parties, which bars or reduces Plaintiffs' recovery against NOMMA.

## TENTH DEFENSE

NOMMA affirmatively pleads the defense of unclean hands.

## ELEVENTH DEFENSE

Alternatively, and only in the event it is determined that Casino committed negligent acts and omissions, NOMMA affirmatively pleads that Casino's negligent acts and omissions were willfully indifferent to the training provided by NOMMA and directly contrary to NOMMA's written policies and procedures. NOMMA pleads all written policies and procedures as if copied herein. Because Casino's negligent acts and omissions violated NOMMA's written policies and procedures, Casino's negligent acts and omissions were done outside the course and scope of his

employment with NOMMA, and NOMMA is not vicariously liable for Casino's actions and omissions.

## TWELFTH DEFENSE

Alternatively, and only in the event it is determined that Casino committed negligent acts and omissions, NOMMA affirmatively pleads that Plaintiffs cannot satisfy the legal element of causation because there is insufficient evidence that "but for" Casino's negligent acts and omissions, V.A. would not have committed suicide.

## THIRTEENTH DEFENSE

Alternatively, and only in the event it is determined that Casino was acting in the course and scope of his employment, NOMMA affirmatively pleads the contents of, and limitations of liability contained in LA. REV. STAT. § 17:439.

## FOURTEENTH DEFENSE

NOMMA affirmatively pleads the contents of, and limitations of liability contained in LA. REV. STAT. § 17:437.1.

## FIFTEENTH DEFENSE

NOMMA affirmatively pleads the contents of, and limitations of liability set forth in Louisiana Revised Statute § 9:2798.1 and public entity immunity.

## SIXTEENTH DEFENSE

NOMMA affirmatively pleads the contents of, and limitations of liability set forth in Louisiana Revised Statute § 17:439.1.

## SEVENTEENTH DEFENSE

NOMMA affirmatively pleads the doctrine of discretionary immunity.

**EIGHTEENTH DEFENSE**

NOMMA affirmatively pleads that it did not act with professional bad faith, criminally, fraudulently, with gross misjudgment, intentionally, willfully, outrageously, recklessly, maliciously, nor did its actions amount to flagrant misconduct. Further, NOMMA alleges that Casino's actions, if occurred as alleged, were intentional acts, and thus outside the course and scope of his employment with NOMMA.

**NINETEENTH DEFENSE**

NOMMA affirmatively pleads that any violation of personal rights was not caused by a policy, custom, or practice of NOMMA.

**TWENTIETH DEFENSE**

If it is determined that NOMMA falls within the definition of a state entity or political subdivision under LA. REV. STAT. § 13:5106, NOMMA affirmatively pleads the applicability of the limitations therein.

**TWENTY-FIRST DEFENSE**

NOMMA affirmatively pleads that it complied with all applicable statutory procedures.

**TWENTY-SECOND DEFENSE**

Plaintiffs have failed to set forth a cause of action against NOMMA.

**TWENTY-THIRD DEFENSE**

NOMMA exercised reasonable care to prevent and correct promptly any allegedly harassing behavior, and plaintiffs failed to take advantage of any preventive or corrective opportunities provided by NOMMA or to avoid harm otherwise. Plaintiffs, accordingly, cannot maintain a sexual harassment claim pursuant to the *Ellerth/Faragher* decisions and line of cases.

**TWENTY-FOURTH DEFENSE**

NOMMA should not be held liable for mental anguish and other damages because it exercised reasonable care to prevent and correct promptly any allegedly discriminatory behavior, and Plaintiffs failed to take advantage of any preventive or corrective opportunities provided by NOMMA or to avoid harm otherwise.

**TWENTY-FIFTH DEFENSE**

NOMMA should not be held liable for punitive damages because of any allegedly unlawful employment actions by NOMMA's employees were contrary to NOMMA's good faith efforts to comply with federal anti-discrimination laws.

**TWENTY-SIXTH DEFENSE**

NOMMA has not acted with malice or reckless disregard to Plaintiffs' federally protected rights.

**TWENTY-SEVENTH DEFENSE**

Plaintiffs are not entitled to an award of punitive damages, as they have not pled and cannot prove facts sufficient to support such an award.

**TWENTY-EIGHTH DEFENSE**

With respect to Plaintiffs' request for punitive damages, NOMMA adopts and plead all defenses and criteria as set forth in *BMW of North America, Inc. v. Gore,* 116 S. Ct. 1589 (1996).

**TWENTY-NINTH DEFENSE**

NOMMA may not be held liable for punitive damages as they have undertaken a good faith effort to comply with Title VII and have never acted with malice or with reckless indifference to Plaintiffs' federally protected rights. NOMMA pleads and adopts all defenses made available to it

by the Supreme Court's decision in *Kolstad v. American Dental Association,* 119 S. Ct. 2118, 2128-29 (1999).

## THIRTIETH DEFENSE

NOMMA affirmatively states that it provided its faculty and staff with all appropriate training, including yearly training relating to anti-bullying and suicide prevention. NOMMA further affirmatively states that it adequately supervised its faculty and staff as it related to duties within the course and scope of their employment at NOMMA.

## JURY TRIAL DEMAND

NOMMA prays for trial by jury on all issues so triable.

**WHEREFORE**, New Orleans Military and Maritime Academy, Inc. prays that there be a Judgment herein in its favor and against Plaintiffs, Donna-Kay E. Armshaw and Stephen P. Armshaw, dismissing all claims asserted against NOMMA with prejudice, at the Armshaws' cost. NOMMA further prays for all equitable relief to which it may be entitled.

Respectfully submitted,

*/s/ Denia S. Aiyegbusi*
ELLIS B. MUROV (#09839)
emurov@deutschkerrigan.com
JOHN JERRY GLAS (#24434)
jerry@deutschkerrigan.com
MELISSA M. LESSELL (#32710)
mlessell@deutschkerrigan.com
DENIA S. AIYEGBUSI (#31549)
denia@deutschkerrigan.com
**DEUTSCH KERRIGAN, L.L.P.**
755 Magazine Street
New Orleans, LA  70130
Telephone: (504) 581-5141
***Attorneys for New Orleans Military and Maritime Academy, Inc.***